# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON KOENIG,<br>　　　　Plaintiff, | : | CIVIL ACTION NO.<br>3:16-cv-514 (JCH) |
| 　　　v. | : | |
| CITY OF NEW HAVEN et al.,<br>　　　　Defendants. | : | FEBRUARY 15, 2017 |

## RULING RE: MOTIONS TO DISMISS (Doc. Nos. 11 and 26)

## I.　　INTRODUCTION

The plaintiff, Sgt. Jason Koenig ("Koenig"), brings this employment discrimination and retaliation action against the defendants, the City of New Haven ("the City") and New Haven Police Chief Dean Esserman ("Esserman").  See Compl. (Doc. No. 1).  This is Koenig's second lawsuit in this court against these defendants.  See id. ¶ 24; Koenig v. City of New Haven, 3:13-cv-1870 (JCH).  The defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  See First Mot. to Dismiss (Doc. No. 11); Second Mot. to Dismiss (Doc. No. 26).

Count One of Koenig's Complaint alleges that the City discriminated against Koenig in violation of the Americans with Disabilities Act (ADA).  See Compl. Count One ¶ 40.  Count Two alleges that the City retaliated against him in violation of the ADA. See id. Count Two ¶¶ 40–41.  Count Three alleges that the City retaliated against him in violation of the Rehabilitation Act.  See id. Count Three ¶¶ 41–42.  Count Four alleges that the City violated the Connecticut Fair Employment Practices Act (CFEPA).  See id. Count Four ¶ 40.  The court construes Count Four broadly to encompass both a CFEPA

discrimination claim and a CFEPA retaliation claim.  Count Five alleges that Esserman, acting in his individual capacity, retaliated against Koenig and discriminated against Koenig based on Koenig's disability or perceived disability, in violation of Koenig's Constitutional right to equal protection.  See id. Count Five ¶¶ 40–41.  Count Six alleges that Esserman intentionally inflicted emotional distress on Koenig.  See id. Count six ¶ 43.

The Second Motion to Dismiss argues that all Koenig's claims are barred by res judicata and collateral estoppel.  See Second Mot. to Dismiss at 1.  The First Motion to Dismiss argues that Koenig fails to state a claim upon which relief can be granted because (1) he was never rejected for a promotion, see Mot. to Dismiss at 9–10; (2) the equal protection clause is inapplicable to Koenig's claims, see id. at 19–21; and (3) any claims against Esserman in his official or individual capacity are barred, see id. at 2, 22.

For the reasons that follow, the defendants' Second Motion to Dismiss (Doc. No. 26) is **DENIED** and the defendants' First Motion to Dismiss (Doc. No. 11) is **GRANTED**. However, Koenig is granted leave to re-plead his Complaint within 14 days, so as to allege additional facts.

## II.    FACTS[1]

Koenig works as a police officer in the City's Department of Police Services.  See Compl. ¶ 1.  The City is an employer with more than 100 employees.  See id. ¶ 7. Koenig's work has always been excellent.  See id. ¶ 13.

Koenig was diagnosed with permanent injuries to his back, shoulder, and neck.

---

[1] The court takes the facts from Koenig's Complaint.  In adjudicating a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in a complaint as true and draws all reasonable inferences in the plaintiff's favor.  See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).

See id. ¶ 14.  Specifically, on February 23, 2005, Koenig was diagnosed with permanent impairment to his left shoulder.  See id. ¶ 16.  On approximately March 1, 2009, Koenig was diagnosed with lumbar spondylosis and lumbar degenerative disc disease.  See id. ¶ 15.  On September 21, 2012, Koenig's shoulder injury worsened, and on December 6, 2012, his back injury worsened.  See id. ¶¶ 15–16.  On approximately February 25, 2013, Koenig was diagnosed with a permanent impairment to his cervical spine.  See id. ¶ 17.  Koenig suffers from a reduced range of motion, weakness, stiffness, pain, and difficulty bending, sitting, flexing, and extending.  See id. ¶ 18.  The City participated in processes that involved assessing the severity of Koenig's injuries.  See id. ¶ 20.

In November 2012, Koenig filed an Affidavit of Illegal Discriminatory Practice against the City with the CHRO and the Equal Employment Opportunity Commission, alleging discrimination based on his disability.  See id. ¶¶ 21–22.  Koenig alleged that the City and Esserman discriminated against him by subjecting him to a medical evaluation and holding a "counseling session" for him.  See id. ¶ 23.

In September 2013, Koenig took and passed an examination for eligibility to become a lieutenant.  See id. ¶ 25.  Koenig did not receive a promotion to Lieutenant, however.  See id. ¶ 33.  Koenig was ranked eighteen out of the officers who passed the examination.  See id. ¶ 25.  The City initially interviewed candidates ranked one through seventeen, stopping right before Koenig.  See id. ¶ 26.  The City then promoted candidates one through twelve.  See id. ¶ 27.  On a second round of interviews, the City again stopped interviewing at candidate number seventeen, right before Koenig.  See id. ¶ 29.

On December 5, 2014, Koenig was the sixth remaining candidate on the ranked list of officers who had passed the lieutenant's examination but had not yet been promoted.  See id ¶ 30.  The City had six open positions at this time, but chose to fill only four of its remaining positions.  See id. ¶ 32.  Koenig thus did not receive a promotion.  See id. ¶ 32.

On March 31, 2016, Koenig filed this lawsuit.  As of the time Koenig filed this lawsuit, sufficient lieutenant positions were available to promote every candidate on the list (including Koenig), but Koenig had not been promoted.  See id. ¶ 34.

## III.   STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'").  The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "A claim has

4

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

## IV.    DISCUSSION

### A.            Second Motion to Dismiss

#### 1.        Res Judicata

The defendants argue that Koenig's claims are barred by res judicata.  See Second Mot. to Dismiss at 1.  "'The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  ATSI Communications, Inc. v. Shaar Fund, Ltd, 547 F.3d 109, 112 n.2 (2d Cir. 2008) (quoting Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000)).  As the Supreme Court has explained, "[u]nder the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (internal quotation marks omitted).  In 2000, the Second Circuit stated that claim preclusion applies if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been raised in the prior action."  Monahan, 214 F.3d at 285; see also Staten v. City of N.Y., 653 F. App'x 78, 79 (2d Cir. 2016).

The doctrine of claim preclusion proscribes "every matter that was offered and received to sustain or defeat a cause of action, as well as to any other matter that the parties had a full and fair opportunity to offer for that purpose." NML Capital, Ltd. v. Banco Cent. de la Republica Argentina, 652 F.3d 172, 184 (2d Cir. 2011) (internal quotation marks omitted). Claim preclusion thus "bars 'claims that might have been raised in the prior litigation but were not.'" Staten, 653 F. App'x at 79 (quoting Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 108 (2d Cir. 2015)). To determine whether the claims could have been raised in the prior action, the court should consider factors including, "whether the same transaction of series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Monahan, 214 F.3d at 285.

Here, an adjudication on the merits occurred in the First Lawsuit. See Koenig v. City of New Haven, 2016 U.S. Dist. LEXIS 156873 (D. Conn. Nov. 10, 2016) (ruling on Motion for Summary Judgment). The First Lawsuit involved the same parties: Koenig initially sued both the City and Esserman, see Compl. in First Lawsuit (Case No. 13-cv-1870, Doc. No. 1), although the court dismissed all claims against Esserman, see Koenig v. City of New Haven, No. 3:13-CV-1870 (JCH), 2015 WL 5797011, at *1 n.1 (D. Conn. Oct. 1, 2015). The court thus must determine whether the claims asserted here were, or could have been, raised in the First Lawsuit.

In the First Lawsuit, Koenig raised almost every type of claim that he now raises. Specifically, in the First Lawsuit, Koenig raised claims of (1) disability discrimination in violation of the ADA, see Compl. in First Lawsuit Count Two, (2) retaliation in violation of

6

the ADA, see Koenig, 2016 U.S. Dist. LEXIS 156873 at *10 n.4. (construing claim), (3) a CFEPA violation, see Compl. in First Lawsuit Count Five, (4) an equal protection violation by Esserman, see id. Count Six, and (5) intentional infliction of emotional distress by Esserman, see id. Count Seven.  The only type of claim Koenig raises now that he did not raise in the First Lawsuit is a claim of retaliation in violation of the Rehabilitation Act.  However, the First Lawsuit did include claims of retaliation, see Koenig, 2016 U.S. Dist. LEXIS 156873 at *10 n.4.; Compl. in First Lawsuit Count Six, and a claim of discrimination in violation of the Rehabilitation Act, see Compl. in First Lawsuit Count Three.

Despite the fact that Koenig already raised in the First Lawsuit almost every type of claim that he now raises, the claims in the First Lawsuit were predicated on the fact that the City suspended Koenig, see Koenig, 2016 U.S. Dist. LEXIS 156873 at *16, whereas the claims in this lawsuit are predicated on the fact that the City has not promoted Koenig, see Compl. ¶ 33.  The court thus concludes that "the same transaction or series of transactions" is not "at issue" here as was at issue in the First Lawsuit.  Monahan, 214 F.3d at 285.  "[R]es judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action."  Proctor v. LeClaire, 715 F.3d 402, 412 (2d Cir. 2013).

It is true that factual overlap exists between the two lawsuits.  Both lawsuits involve Koenig's employment as a police officer in the City of New Haven.  In support of his claims in the First Lawsuit, Koenig submitted to the court a copy of his February 2015 Connecticut Commission on Human Rights and Opportunities ("CHRO") Affidavit of Illegal Discriminatory Practice, which included a complaint that Koenig had not

received a promotion to Lieutenant.  See Koenig, 2016 U.S. Dist. LEXIS 156873 at *7.

Both (1) the February 2015 CHRO Affidavit (Case No. 13-cv-1870, Doc. No. 63-3),

which Koenig submitted as evidence in the First Lawsuit, and (2) the Complaint in this

lawsuit, recount the same facts regarding the alleged failure to promote.[2]  The First

Lawsuit centered on the City's reaction to an inappropriate comment that Koenig

allegedly made, regarding the topic of promotions.  See Investigation Rep. in First

Lawsuit (Case No. 13-cv-1870, in Doc. No. 77-3 at 5–9) (describing inappropriate

comment as comment regarding what an employee such as Koenig must do or be, to

receive a promotion).

    However, while some of "the same evidence is needed to support both" the

claims in the First Lawsuit and the claims in this lawsuit, additional evidence also is

---

[2] Compare Koenig, 2016 U.S. Dist. LEXIS 156873 at *6–7 ("In September 2013, Koenig took and passed an examination for eligibility to become a lieutenant.  Koenig did not receive a promotion to Lieutenant, however.  Koenig has claimed that he was ranked eighteen out of the officers who passed the examination.  Koenig claimed that the City initially interviewed candidates ranked one through seventeen, stopping right before Koenig.  Koenig claimed that the City then promoted candidates one through twelve. Koenig claimed that, on a second round of interviews, the City again stopped interviewing at candidate number seventeen, right before Koenig. . . . On December 5, 2014, Koenig was the sixth remaining candidate on the ranked list of officers who had passed the lieutenant's examination but had not yet been promoted.  The City had six open positions at this time, but chose to fill only four of its remaining positions.  Koenig thus did not receive a promotion.") (citing Feb. 2015 CHRO Affidavit) (citations omitted) with Compl. ¶¶ 25–32 ("On September 28 and 29, 2013, the plaintiff took and passed the examination for promotion to Lieutenant administered by the defendant.  The plaintiff was ranked number eighteen (18) on the list of twenty (20).  Shortly after the creation of the list, the defendant interviewed the first seventeen (17) candidates on the list in consideration of their promotion.  The defendants stopped interviewing at the candidate immediately before him on the list, and did not interview the plaintiff.  Upon information and belief, these interviews took place very close in time after the plaintiff filed his federal lawsuit against the defendants.  Thereafter, twelve (12) lieutenant's positions became available.  The defendants then promoted the first twelve (12) names on the promotion list to fill those available positions. After this first round of promotions from the list, six (6) more Lieutenant's positions became available.  The plaintiff was included in the next six candidates. The defendant Esserman then reinterviewed the candidates on the promotion list, again through candidate seventeen (17), again stopping immediately short of interviewing the plaintiff.  At the time that the defendants conducted the reinterviews, it had six (6) Lieutenants' positions to fill. At that time, the plaintiff was the sixth (6th) candidate eligible for promotion. Had the defendants promoted the next six (6) candidates on the list, the plaintiff, who was number eighteen (18) on the list, would have been promoted to Lieutenant.  On or about December 5, 2014, however, the defendants promoted only four (4) candidates from the list, despite having six (6) Lieutenant's positions available.  The plaintiff was not promoted.").

needed to support the claims in this lawsuit, and "the facts essential to the" current claims were not "present in the" First Lawsuit. Monahan, 214 F.3d at 285. Specifically, the claims in this lawsuit will require Koenig to put forth evidence to show that the City in fact failed to promote him, as well as why the City failed promote him. The claims in the First Lawsuit, however, would not necessarily have required Koenig to put forth evidence to show that the City failed to promote him, or why. While evidence that the City failed to promote Koenig due to discrimination theoretically could have helped to show pretext in the First Lawsuit, see Koenig, 2016 U.S. Dist. LEXIS 156873 at *27, there are many ways for a plaintiff to show pretext, and thus Koenig was not required to prove discriminatory failure to promote in order to show pretext in the First Lawsuit.

The court concludes that, based on the timing of events, Koenig lacked a "full and fair opportunity to offer" the City's failure to promote as an adverse employment action in the First Lawsuit. NML Capital, 652 F.3d at 184. Koenig filed the First Lawsuit before the latest of the facts he alleges regarding the City's failure to promote him. Compare Complaint in First Lawsuit (filed December 17, 2013) with Compl. ¶¶ 30–33 (alleging that, on December 5, 2014, the City declined to promote Koenig and that the City still had not promoted Koenig at the time Koenig filed this lawsuit, on March 30, 2016). In fact, even Koenig's Last Amended Complaint (Case No. 13-cv-1870, Doc. No. 59) in the First Lawsuit was filed before the latest date on which Koenig's Complaint in this lawsuit alleges wrongdoing. Compare Last Amended Compl. in First Lawsuit (filed October 14, 2015) with Compl. ¶ 33 (alleging that City still had not promoted Koenig at the time Koenig filed this lawsuit, on March 30, 2016). The Second Circuit has explained that,

9

> For the purposes of res judicata, the scope of litigation is framed by the complaint at the time it is filed. The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated. Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, he is not required to do so.

Computer Assocs. Int'l v. Altai, Inc., 126 F.3d 365, 369–70 (2d Cir. 1997) (internal quotation marks, brackets, and citations omitted); see also Proctor, 715 F.3d at 412 (quoting Computer Assocs.); Smith v. City of N.Y., 130 F. Supp. 3d 819, 829 (S.D.N.Y. 2015) (quoting Computer Assocs.), aff'd, No. 15-3059, 2016 WL 6536468 (2d Cir. Nov. 3, 2016). Thus, Koenig "was under no obligation to amend [his] complaint in the [First Lawsuit], and res judicata does not bar litigation of claims arising from transactions which occurred after the [First Lawsuit] was brought." Computer Assocs., 126 F.3d at 370.

The court therefore concludes that res judicata does not bar the claims in Koenig's Complaint.

### 2. Collateral Estoppel

The defendants also argue that Koenig's claims are barred by collateral estoppel. See Second Mot. to Dismiss at 1. Collateral estoppel, or issue preclusion, forecloses relitigation of an issue that was "actually litigated and decided by a court of competent jurisdiction in a prior action . . . between the same parties or their privies." Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotation marks omitted). "Accordingly, collateral estoppel applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and

(4) the issues previously litigated were necessary to support a valid and final judgment on the merits."  Id. at 489 (internal quotation marks omitted).

The defendants, "[a]s the party seeking the benefit of collateral estoppel, [ ] bear the burden of proving the identity of the issues—that is, [they] must prove that the issues for which preclusion is sought are identical to the issues adjudicated."  Whalen v. Ansell Perry, Inc., No. 98 CIV. 0188 (BSJ), 2004 WL 840286, at *4 (S.D.N.Y. Apr. 16, 2004) (citing Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991)).  The defendants argue that Koenig "has already litigated the issue of whether or not he was discriminated against on the basis of his disability and/or retaliated against for filing the 2012 CHRO."  Second Mot. to Dismiss at 8.  The defendants, however, describe the "issue" in the First Lawsuit too broadly.  While the term, "'issue' must be understood broadly enough to prevent repetitive litigation of what is essentially the same dispute," issue preclusion applies only "where a party [seeks] to litigate twice an issue arising from virtually identical facts," in other words, where "the factual differences [are] of no legal significance."  B & B Hardware v. Hargis Indus., 135 S. Ct. 1293, 1308 (2015) (internal quotation marks, ellipses, and citations omitted).  The issue "actually litigated and actually decided" in the First Lawsuit, Ali, 529 F.3d at 489, is more properly described as whether Koenig was discriminated or retaliated against by being suspended, see Koenig, 2016 U.S. Dist. LEXIS 156873 at *16.  The issue in this lawsuit, however, is whether Koenig was discriminated or retaliated against by not being promoted.  See Compl. ¶ 33.  These two issues are not "essentially the same dispute," B & B Hardware, 135 S. Ct. at 1308, because the first dispute focuses on whether and why Koenig was suspended, whereas this dispute focuses on whether and why Koenig

11

was not promoted.  The facts central to the first dispute are facts surrounding Koenig's suspension, whereas the facts central this dispute are facts surrounding Koenig's candidacy for promotion.  Thus, the mere fact that the First Lawsuit also focused on questions of discrimination and retaliation does not bar the claims in this lawsuit.

The defendants also argue that collateral estoppel bars Koenig's claims because, in ruling on the Motion for Summary Judgment in the First Lawsuit, this court observed that Koenig had not put forth evidence from which a jury could find that the City failed to promote Koenig due to discrimination or retaliation.  See Second Mot. to Dismiss at 8 (citing Koenig, 2016 U.S. Dist. LEXIS 156873 at *27).

The issue of whether the City failed to promote Koenig due to discrimination or retaliation, however, was not "actually litigated" in the First Lawsuit.  Ali, 529 F.3d at 489.  As defense counsel admitted at oral argument, Koenig's Complaint in the First Lawsuit did not allege that the City or Esserman failed to promote him, let alone that they did so for discriminatory or retaliatory reasons.  See Compl. in First Lawsuit; see also, e.g., Last Am. Compl. in First Lawsuit.  Moreover, Koenig did not even raise discriminatory failure to promote as evidence of pretext in his Response to the Motion for Summary Judgment in the First Lawsuit (Case No. 13-cv-1870, Doc. No. 82-1). Koenig merely argued, in support of his contention that his suspension was due to a false allegation against him, that, "the last time that there was a promotional opportunity, a false allegation was similarly made against" Koenig.  Response to Mot. for Summ. J. in First Lawsuit at 14.  Koenig did not go so far as to argue that the City or Esserman had failed to promote Koenig, let alone that they did so for discriminatory or retaliatory reasons.  See id. at 14.

12

Instead, this court's Ruling on the Motion for Summary Judgment in the First Lawsuit <u>sua sponte</u> raised the issue of whether events surrounding Koenig's application for promotion could constitute evidence of pretext, <u>see</u> <u>Koenig</u>, 2016 U.S. Dist. LEXIS 156873 at *27, after an exhaustive review of all evidence submitted to the court during the First Lawsuit, as part of an effort to ensure that the court had considered any potential evidence of pretext.

At oral argument, defense counsel stated that Koenig raised discriminatory failure to promote in response to a Motion to Dismiss in the First Lawsuit. The First Lawsuit involved several Motions to Dismiss. Koenig wrote Responses to a few of these Motions. The court discusses three Responses which contained promotion-related language:

In his Response to a Motion to Dismiss the Amended Complaint in the First Lawsuit (Doc. No. 37-1), Koenig stated that, "should this Honorable Court deem amendment of the complaint necessary on [the adverse employment action] point, the plaintiff could state that since filing the instant action, . . . despite available positions and his successful passage of the Lieutenant's examination, the defendants passed him over for promotion to that position, an advance in rank and salary." Response to Mot. to Dismiss Am. Compl. in First Lawsuit at 21. Koenig clarified that failure to promote was "not presently alleged," and argued that the court could find in his favor "without" such an allegation. <u>Id.</u> at 23. The court concludes that these comments, on their own, do not constitute "actually litigat[ing]" the issue of discriminatory failure to promote, <u>Ali</u>, 529 F.3d at 489, especially given that Koenig clarified that discriminatory failure to promote was <u>not</u> alleged, and urged the court to rule in his favor without such an allegation.

13

Furthermore, Koenig never amended any of his complaints in the First Lawsuit to allege that Koenig was passed over for a promotion.

At the end of his Response to a Motion to Dismiss the Third Amended Complaint in the First Lawsuit (Doc. No. 57-1), Koenig briefly mentioned that "failure to promote constitute[s] adverse action," and that "[t]he defendants have refused to promote" Koenig.  Response to Mot. to Dismiss Third Am. Compl. in First Lawsuit at 28.  This comment was tacked on to the last page of a seven-page section on adverse employment action.  See id. at 22–28.  The section focused primarily on arguing that Koenig suffered an adverse employment action in the form of (1) a medical examination, (2) a "disciplinary meeting," and (3) an "Internal Affairs investigation," resulting in suspension.  Id. at 22–28.  A court in the Southern District of New York has correctly found that issue preclusion did not apply where, among other things, "argumentation on [the] point was limited to a few sentences."  Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 513 B.R. 437, 441 (S.D.N.Y. 2014).  "[T]he sparsity of discussion on" an issue weighs against a finding that the issue was "actually litigated." Id. at 441 (internal quotation marks omitted) (quoting Chicago Truck Drivers, Helpers & Warehouse Union v. Century Motor Freight, 125 F.3d 526, 530 (7th Cir. 1997)).  Here, the City did not file a reply, and thus did not reply to Koenig's brief promotion-related comments.  The court's Ruling on the Motion to Dismiss did not mention failure to promote.  See Koenig, 2015 WL 5797011.  In fact, the Ruling dismissed Koenig's claims based on failure to plausibly allege disability and did not reach the issue of adverse employment action at all.  See id. at *3.  Furthermore, a court decides whether to grant a motion to dismiss based on the allegations in the complaint, see Crawford, 796 F.3d

14

at 256, and, as discussed above, Koenig did not allege failure to promote in any complaint in the First Lawsuit.  The parties thus lacked a reason to expect the court to base its Motion to Dismiss Ruling on any potential failure to promote.  Under these circumstances, the court concludes that Koenig's off-hand comments regarding promotion in his Response to the Motion to Dismiss the Third Amended Complaint in the First Lawsuit do not constitute "actual[ ] litigat[ion]" of the issue of discriminatory failure to promote.  <u>Ali</u>, 529 F.3d at 489.

Koenig's attorney appears to have cut-and-pasted his above-mentioned comments regarding promotion into the end of his Response to the Motion to Dismiss the Fourth Amended Complaint in the First Lawsuit (Case No. 13-cv-1871, Doc. No. 63-1).  <u>See</u> Response to Mot. to Dismiss Fourth Am. Compl. in First Lawsuit at 15 (repeating that "failure to promote constitute[s] adverse action," and that "[t]he defendants have refused to promote" Koenig).  Again, these stray comments were only a small portion of Koenig's sixteen-page Response.  <u>See</u> <u>id.</u>  Again, the City did not file a reply, and thus did not reply to Koenig's promotion comment.  The court's Ruling on this Motion to Dismiss did not mention failure to promote.  <u>See</u> <u>Koenig v. City of New Haven</u>, 2016 U.S. Dist. LEXIS 45082 (D. Conn. Apr. 1, 2016).  Rather, the Ruling focused entirely on Koenig's exhaustion of his administrative remedies.  <u>See</u> <u>id.</u>  Furthermore, as discussed above, the parties lacked a reason to expect the court to base its Motion to Dismiss Ruling on any potential failure to promote, due to the absence of promotion-related allegations in the Fourth Amended Complaint in the First Lawsuit.  The court thus concludes that Koenig's off-hand comments regarding promotion in his Response to the Motion to Dismiss the Fourth Amended Complaint in

the First Lawsuit do not constitute "actual[ ] litigat[ion]" of the issue of discriminatory failure to promote, either.  <u>Ali</u>, 529 F.3d at 489.

Because the defendants have not met their burden of demonstrating that any issue necessary to prove Koenig's claims in this lawsuit is "identical" to any issue that was "actually litigated and actually decided" against Koenig in the First Lawsuit, collateral estoppel does not bar Koenig's claims.  <u>Ali</u>, 529 F.3d at 489.  However, the court makes no ruling as to whether collateral estoppel may bar Koenig, or the defendants, from making particular arguments in this case going forward.

Because neither <u>res judicata</u> nor collateral estoppel bar Koenig's claims, the Second Motion to Dismiss is denied.

      B.             <u>First Motion to Dismiss</u>

          1.          ADA, Rehabilitation Act, and CFEPA

Counts One through Four each allege discrimination, retaliation, or both, in violation of the ADA, the Rehabilitation Act, or CFEPA.  As this court explained in the First Lawsuit, courts analyze ADA discrimination and retaliation claims, and Rehabilitation Act and CFEPA discrimination claims, by following the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) burden-shifting analysis.  <u>See Koenig</u>, 2016 U.S. Dist. LEXIS 156873 at *10–13.  This same <u>McDonnell Douglas</u> burden-shifting analysis also applies to Rehabilitation Act and CFEPA retaliation claims.  <u>See, e.g.</u>, <u>Richter v. Connecticut Judicial Branch</u>, No. 3:12-CV-1638 (JBA), 2014 WL 1281444, at *9 (D. Conn. Mar. 27, 2014), <u>aff'd</u>, 600 F. App'x 804 (2d Cir. 2015) (discussing Rehabilitation Act); <u>Preston v. Bristol Hosp.</u>, 645 F. App'x 17, 19 (2d Cir.

2016) (citing Kaytor v. Elec. Boat Corp., 609 F.3d 537, 556 (2d Cir. 2010)) (discussing CFEPA).

    Under the McDonnell Douglas burden-shifting analysis, Koenig would eventually be required to put forth evidence constituting a prima facie case of discrimination or retaliation.  See McDonnell Douglas, 411 U.S. at 802 ("The complainant . . . must carry the initial burden [ ] of establishing a prima facie case of [ ] discrimination.").  As this court explained in the First Lawsuit, Koenig v. City of New Haven, 2016 U.S. Dist. LEXIS 156873 (D. Conn. Nov. 10, 2016), ADA discrimination and retaliation claims, and Rehabilitation Act and CFEPA discrimination claims, each require that the employee suffer an "adverse employment action" as part of the prima facie case.  See Koenig, 2016 U.S. Dist. LEXIS 156873 at *15.  This requirement also applies to Rehabilitation Act and CFEPA retaliation claims.  See Pierre v. Napolitano, 958 F. Supp. 2d 461, 482 (S.D.N.Y. 2013) (discussing Rehabilitation Act); Comm'n on Human Rights & Opportunities v. Echo Hose Ambulance, 156 Conn. App. 239, 247, aff'd, 322 Conn. 154 (2016) (discussing CFEPA).

    At this motion to dismiss stage, Koenig is thus required to "plead facts sufficient, if taken as true, to establish," inter alia, "an adverse employment action."  See Brown v. City of N.Y., 622 F. App'x 19, 20 n.1 (2d Cir. 2015) (internal quotation marks omitted) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 315–16 (2d Cir. 2015)) (discussing Title VII retaliation claim); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) ("[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that[, inter alia,] defendants discriminated—or took an adverse employment action—against him.").  The requirement that, to survive a motion

to dismiss, a complaint must plausibly allege an adverse employment action, applies to ADA, Rehabilitation Act, and CFEPA discrimination and retaliation claims.  See, e.g., Riddle v. Citigroup, 640 F. App'x 77, 79 (2d Cir. 2016) (discussing ADA retaliation claim); Cain v. Mandl Coll. of Allied Health, Mandl Coll., Inc., No. 14 CIV. 1729 (ER), 2016 WL 5799407, at *6 (S.D.N.Y. Sept. 30, 2016) (discussing ADA and Rehabilitation Act retaliation claims); Kelly v. N.Y. State Office of Mental Health, No. 13-CV-3383 (KAM) (SLT), 2016 WL 4203470, at *10 (E.D.N.Y. Aug. 9, 2016) (discussing Rehabilitation Act retaliation and discrimination claims); Bolick v. Alea Grp. Holdings, Ltd., 278 F. Supp. 2d 278, 283 (D. Conn. 2003) (discussing CFEPA retaliation claim); Amato v. Hearst Corp., 149 Conn. App. 774, 783 (2014) (discussing CFEPA discrimination claim).  As discussed below, Koenig has failed to allege an adverse employment action.  Counts One through Four must therefore be dismissed.

Koenig correctly notes that "discriminatory failure to promote" constitutes an adverse employment action.  See Response (Doc. No. 21-1) at 13 (quoting Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002)).  However, the Complaint, as currently written, does not plausibly allege discriminatory failure to promote.  "Rather," as the defendants observe, Koenig's "allegations simply show that he has not yet been promoted to an alleged position that has not been filled by anybody."  See First Mot. to Dismiss at 11.  That said, at oral argument, Koenig's attorney represented that the City has announced plans to rerun the lieutenant examination, to obtain a new ranking of candidates from which to fill the vacant positions, rather than continuing to promote candidates in the order of the existing ranking.  Defense counsel did not dispute this representation.  Koenig's attorney suggested that the defendants decided to rerun the

18

examination in the hope that enough new candidates will receive higher examination rankings than Koenig to prevent the City from having to promote Koenig.  If Koenig can amend his Complaint to allege that the defendants have decided to rerun the lieutenant examination, and to choose candidates to fill the vacant lieutenant positions from the resultant new candidate ranking, thus discarding the original ranking, it would appear that Koenig could plausibly allege failure to promote.

The Complaint states that, at the time the City conducted the second round of interviews, the City "had six (6) Lieutenants' positions to fill," and Koenig "was the sixth (6th) candidate eligible for promotion."  Compl. ¶ 30.  Thus, had the City "promoted the next six (6) candidates on the list," Koenig "would have been promoted to Lieutenant." Id. ¶ 31.  The Complaint alleges that the City instead "promoted only four (4) candidates from the list, despite having six (6) Lieutenant's positions available," and that Koenig was therefore "not promoted."  Id. ¶ 32.  The Complaint thus demonstrates that the City did not pick anyone else to take Koenig's place, but rather, simply has not yet filled certain positions.  The Complaint also supports the conclusion that, in addition to having not yet promoted Koenig, the City has not even promoted the candidate directly before Koenig in the ranking.  See id. ¶ 32.

As a general rule, "[t]o establish a prima facie case of discriminatory failure to promote, a plaintiff must allege that she or he applied for a specific position or positions and was rejected therefrom."  Kinsella v. Rumsfeld, 320 F.3d 309, 314 (2d Cir. 2003) (emphasis added) (internal quotation marks omitted); see also Szwalla v. Time Warner Cable, LLC, 135 F. Supp. 3d 34, 53 (N.D.N.Y. 2015).  This requirement applies to Rehabilitation Act, ADA, and CFEPA claims.  See Kinsella, 320 F.3d at 314 (applying to

Rehabilitation Act claim); Johnston v. Carnegie Corp. of N.Y., No. 10 CIV. 1681 (PAC)

(DF), 2011 WL 1085033, at *11 (S.D.N.Y. Feb. 24, 2011), report and recommendation

adopted, No. 10 CIV. 1681 PAC DF, 2011 WL 1118662 (S.D.N.Y. Mar. 23, 2011)

(applying to ADA claim); Sedotto v. Borg-Warner Protective Servs. Corp., 94 F. Supp.

2d 251, 263, 268 (D. Conn. 2000) (discussing requirement in context of Title VII and

Age Discrimination in Employment Act, and stating that same legal standards apply to

CFEPA claims).

The Supreme Court has stated that the elements of a prima facie case of

discrimination include, for example,

> (i) that [the plaintiff] belongs to a [protected class]; (ii) that he
> applied and was qualified for a job for which the employer was
> seeking applicants; (iii) that, despite his qualifications, he was
> rejected; and (iv) that, after his rejection, the position
> remained open and the employer continued to seek
> applicants from persons of complainant's qualifications.

McDonnell Douglas, 411 U.S. at 802 (emphasis added).  By including the third item in

this list, that "he was rejected," McDonnell Douglas makes clear that the mere facts that

a member of a protected class applied for a position, and that the position remained

open after his application, do not constitute a prima facie case of discrimination, without

an allegation that the employer rejected the plaintiff.

In Treglia, the employer stated that the plaintiff "would not receive a promotion [ ]

'now or ever.'"  313 F.3d at 717.  The employer in Treglia thus affirmatively rejected the

employee's application for promotion.  As the defendants observe, Koenig has not yet

plausibly alleged such rejection here.  See First Mot. to Dismiss at 9.  To the contrary,

the Complaint simply states that certain promotions have not yet occurred, thus leaving

open the possibility that those promotions may one day occur, and that Koenig may be

promoted at that time.  <u>See</u> Compl. ¶ 34 ("Presently, sufficient Lieutenant's positions are available to promote every candidate on the list.  Nevertheless, the plaintiff has not been promoted.").  If alleged, however, the City's discarding of the current lieutenant candidate ranking, in favor of a new ranking obtained by rerunning the examination, could constitute an implicit rejection of Koenig.  By reordering the candidate list, the City would remove Koenig from his current place in the ranking—a place which would otherwise have almost ensured that, were the City to fill all its lieutenant positions, Koenig would receive a promotion.

An exception to the general rule that a plaintiff must have applied for a position and been rejected exists "where the facts of a particular case make" the rule "a quixotic requirement," such as where an employer "refuse[s] to accept applications for positions or hand-pick[s] individuals for promotion to a position without considering applicants." <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 710 (2d Cir. 1998); <u>see also</u> <u>Dawson v. N.Y. City Transit Auth.</u>, 624 F. App'x 763, 769 (2d Cir. 2015) (quoting <u>Brown v. Coach</u>). Koenig has so far failed to allege any facts to suggest that the requirement is "quixotic" here, however.  <u>Brown v. Coach</u>, 163 F.3d at 710.  To the contrary, the Complaint currently describes the City as promoting applicants in the order of their qualification. <u>See</u> Compl. ¶¶ 27, 31–32.  However, if Koenig were to amend his Complaint to allege that the City effectively scrambled the candidate ranking before Koenig could receive a promotion, thus depriving Koenig of his original place in the ranking which would have put him in line for a promotion, this additional allegation could plausibly support an inference that the requirement that the City explicitly reject Koenig's candidacy is "quixotic."  <u>Brown v. Coach</u>, 163 F.3d at 710.

Ordinarily, an employee "cannot show that [the] decision not to promote him was discriminatory," where "no one was promoted to" the relevant position during the relevant time period.  Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 683 (7th Cir. 2000); see also Bowers v. Peake, 366 F. App'x 562, 563 (5th Cir. 2010) ("[N]on-selection for a position that remains unfilled cannot support a retaliation claim."); Grove v. Admiral Peary Area Vocational-Tech. Sch., 221 F. App'x 101, 104 (3d Cir. 2007) (finding that plaintiff "clearly has failed to establish a required element of a prima facie case of age discrimination" where employer "never filled" plaintiff's position after plaintiff's demotion); Tucker v. N.Y. City, No. 05 CIV. 2804 (GEL), 2008 WL 4450271, at *4 (S.D.N.Y. Sept. 30, 2008), aff'd, 376 F. App'x 100 (2d Cir. 2010) (holding that plaintiff failed to state a prima facie case of discrimination where "no one else was appointed to the position in his stead"); Singleton v. Mukasey, No. 06-CIV.-6588 (GEL), 2008 WL 2512474, at *4 (S.D.N.Y. June 13, 2008), aff'd sub nom. Singleton v. Holder, 363 F. App'x 87 (2d Cir. 2010) (holding that plaintiff "has not made out a prima facie showing of discrimination" where the promotion plaintiff sought was not "awarded to anyone."). This is because, usually, in such a circumstance, "all aspirants for promotion were treated alike."  Kulumani, 224 F.3d at 683.

Here, sixteen candidates were eventually promoted to fill the first sixteen lieutenant positions that became available after the late September 2013 examination. See Compl. ¶¶ 25–32.  However, these sixteen candidates were promoted in order of their qualification ranking, and each of these sixteen candidates had a higher qualification ranking that Koenig.  See id. ¶¶ 25–32.  Considering that Koenig was ranked eighteen on the list of the twenty candidates who passed the examination, see

22

id. ¶ 25, Koenig does not argue that he should have been promoted to one of these first sixteen positions, see Response at 16 (arguing only that the City should have continued promoting candidates "in the order of the list"). Rather, Koenig's claims are based on the contention that he should have been promoted to the eighteenth lieutenant position that became available. See Compl. ¶¶ 31–32 ("Had the defendants promoted the next six (6) candidates on the list [after promoting the first twelve], the plaintiff, who was number eighteen (18) on the list, would have been promoted to Lieutenant. . . . [H]owever, the defendants promoted only four (4) [more] candidates from the list, [up to candidate number sixteen,] despite having six (6) [more] Lieutenant's positions available [enough to promote candidates up to candidate number eighteen]. The plaintiff was not promoted."). Here, "no one was promoted to" the relevant position—the eighteenth lieutenant position—during the time period discussed in the Complaint. Kulumani, 224 F.3d at 683; see also Compl. ¶ 34 ("Presently, sufficient Lieutenant's positions are available to promote every candidate on the list [meaning up to candidate number twenty]. Nevertheless, the plaintiff has not been promoted.").

The court acknowledges that "[a] decision not to award a position to anyone might be discriminatory where the decision was motivated by discriminatory animus, for example, where all the applicants are members of the protected class." Tucker, 2008 WL 4450271, at *4 n.6. Koenig has not alleged, however, that all remaining applications for the lieutenant position were disabled.

Additionally, "given the flexible nature of the prima facie burden," a plaintiff may "be able to prevail even if the employer never filled the position [that the plaintiff] sought," as long as the plaintiff can plausibly allege that his non-promotion "gives rise to

an inference of discrimination" for other reasons, such as because the plaintiff was treated differently than applicants outside of the plaintiff's protected class. Chappell-Johnson v. Powell, 440 F.3d 484, 486, 488 (D.C. Cir. 2006). Here, Koenig has not yet plausibly alleged that the fact that the City has not yet promoted him gives rise to an inference of discrimination. Rather than alleging that non-disabled applicants were treated differently than Koenig, the Complaint leads to the inference that the candidate immediately before Koenig in the ranking, and the two candidates after Koenig in the ranking, were similarly not promoted, although enough positions were available to promote all candidates. See Compl. ¶¶ 25–34 (stating that Koenig was ranked eighteen out of twenty candidates, indicating that the City promoted the first sixteen candidates on the list, and stating that, "[p]resently, sufficient Lieutenant's positions are available to promote every candidate on the list"). If, however, Koenig re-pleads his Complaint to allege that the defendants decided to discard the original candidate ranking, and to select candidates to fill the lieutenant positions based on their scores on the new examination, these new allegations could support "an inference of discrimination." Chappell-Johnson, 440 F.3d at 488. Specifically, these new allegations could support the inference that the City decided to rerun the examination in order to obtain a different candidate ranking, so that the City might be able to avoid promoting Koenig. The court acknowledges that the City's decision to rerun the examination would affect the ranking status not only of Koenig, but also of the candidate immediately before Koenig in the ranking and the two candidates after him. However, by rerunning the examination before promoting the candidate immediately before Koenig, the City could have hoped to provide cover for its intent to discriminate or retaliate against Koenig, while still

24

achieving the goal of filling all open lieutenant positions with employees other than
Koenig.

In Treglia, the employer "promoted two other" employees "over" the plaintiff even
though the plaintiff "had the highest score on the civil service examination for that
position."  313 F.3d at 717.  Here, however, Koenig currently alleges only that officers
who received higher rankings than he were promoted.  See Compl. ¶¶ 26–32.
Furthermore, a fair reading of the Complaint leads to the inference that even one of the
officers who received a higher ranking than Koenig was not promoted.[3]  See id. ¶¶ 30–
32.  Koenig does not yet allege that candidates were promoted out of order.[4]  See id. ¶¶
26–32.

The court concludes that Koenig has so far failed to state a prima facie case of
"discriminatory failure to promote," Treglia, 313 F.3d at 720, because the City neither (1)
explicitly or implicitly rejected Koenig's application, nor (2) promoted a less-qualified

---

[3] Koenig states in his Response to the First Motion to Dismiss "that everyone else on the list was
promoted in order to candidate 17."  Response at 16.  The Response thus implies that Koenig was the
only candidate who passed the examination but was not promoted.  The Complaint, however, implies that
the candidate ranked immediately higher than Koenig was similarly not promoted.  See Compl. ¶¶ 30–32
("At the time that the defendants conducted the reinterviews, . . . the plaintiff was the sixth (6th)
[remaining] candidate eligible for promotion. . . . [T]he defendants promoted only four (4) [more]
candidates from the list.).

[4] At oral argument, counsel for Koenig indicated that he believes the City is planning to rerun the
examination in order to promote other candidates without having to promote Koenig.  The court need not
consider at this time whether the promotion of other candidates, after rerunning the examination, would
constitute promoting other candidates "over" Koenig, in the meaning of Treglia, 313 F.3d at 717, and,
thus, an adverse employment action.  Rather, as discussed above, the mere additional allegation that the
City has announced plans to rerun the examination, and to fill lieutenant positions from the resultant
ranking, would appear sufficient to allow the Complaint to plausibly allege an adverse employment action
in the form of failure to promote.  This is because (1) by alleging that the City is effectively "scrambling"
the candidate order, thus depriving Koenig of his current position in the ranking—a position for which
there remains a vacancy—, Koenig could plausibly allege that the City implicitly "rejected" him, Kinsella,
320 F.3d at 314, (2) this additional allegation could plausibly support an inference that the requirement
that the City explicitly reject Koenig's candidacy is "quixotic," Brown v. Coach, 163 F.3d at 710, and (3)
more generally, this new allegation could support an "inference of discrimination," Chappell-Johnson, 440
F.3d at 488.

candidate over Koenig.  The Complaint does not plausibly allege any other adverse employment action.  Koenig has therefore failed to allege an adverse employment action, as required to state a claim for discrimination or retaliation under the ADA, the Rehabilitation Act, or CFEPA.  For this reason, Counts One through Four are dismissed.

The court concludes that the Complaint could plausibly allege an adverse employment action, however, if the Complaint were amended to add the facts represented by Koenig's attorney at oral argument, namely, that the City has announced plans to rerun the lieutenant examination, to find new candidates to fill the vacant positions, rather than continuing to promote candidates in the order of the existing ranking.  Of course, in saying so, the court must make two observations:  (1) the court's statement that the plaintiff's amended allegations could plausibly allege an adverse employment action is predicated on the assumption that the plaintiff's amended allegations will be as was suggested at oral argument, and (2) there may be a non-discriminatory reason that the two vacancies were not filled (e.g., budgetary constraints), but that, of course, is not pertinent at the Motion to Dismiss stage.

2.      Equal Protection Clause

Count Five alleges that Esserman, acting in his individual capacity, retaliated and discriminated against Koenig in violation of the Constitution's equal protection clause. Count Five must be dismissed for two reasons.

First, as currently pled, Koenig's equal protection claim must be dismissed for the same reasons that this court dismisses his ADA, Rehabilitation Act, and CFEPA claims: that is, the lack of an adverse employment action.  See, e.g., Brown v. City of Syracuse, 673 F.3d 141, 144 (2d Cir. 2012) (describing "an 'adverse employment action'" as "a

26

lynchpin of" plaintiff's employment discrimination claims, which included an equal protection clause claim); <u>Wu v. Metro-N. Commuter R.R.</u>, No. 14-CV-7015 (LTS) (FM), 2015 WL 5567043, at *10 (S.D.N.Y. Sept. 22, 2015) ("Where Plaintiff's claim falls short is in his failure to demonstrate that he suffered an adverse employment action for the purposes of his Equal Protection claim. . . . Because Plaintiff has failed to plead facts demonstrating that he suffered [a discrimination-motivated] adverse employment action at the hands of Defendant [ ], his Equal Protection Claim against [Defendant] must fail."); <u>Basak v. N.Y. State Dep't of Health</u>, 9 F. Supp. 3d 383, 390 (S.D.N.Y. 2014) ("[T]he elements of plaintiff's Equal Protection claim for [employment] discrimination must encompass . . . [an] adverse employment action.").  A court in the Northern District of New York has held that, due to the necessity of an adverse employment action for an equal protection claim under section 1983 of title 42 of the United States Code, the plaintiff's equal protection claims could survive only against those defendants who were personally involved in the adverse employment action that the plaintiff alleged, namely, discriminatory failure to promote.  <u>See</u> <u>Griffith v. N.Y. State Dep't of Health</u>, No. 1:14-CV-1128, 2015 WL 4545991, at *8–9 (N.D.N.Y. July 28, 2015).  Because Koenig has thus far failed to plausibly allege any discriminatory failure to promote, or any other adverse employment action, Koenig cannot have plausibly alleged Esserman's personal involvement in discriminatory failure to promote, or any other adverse employment action.  Thus, under <u>Griffith</u>, Koenig has failed to state a claim against Esserman for an equal protection clause violation.

The Second Circuit has explained that,

> [t]he Fourteenth Amendment provides public employees with
> the right to be free from discrimination.  Consequently, public

> employees aggrieved by discrimination in the terms of their
> employment may bring suit under 42 U.S.C. § 1983 against
> any responsible persons acting under color of state law. . . .
> Once the color of law requirement is met, a plaintiff's equal
> protection claim parallels his Title VII claim, except that a §
> 1983 claim, unlike a Title VII claim, can be brought against an
> individual.  Thus, for a § 1983 discrimination claim to survive
> [ ] a motion to dismiss, a plaintiff must plausibly allege a claim
> under the same standards applicable to a Title VII claim—and
> that the adverse action was taken by someone acting under
> color of state law.

Vega, 801 F.3d at 87–88 (internal quotation marks and citations omitted).  A Title VII

discrimination or retaliation claim requires a plaintiff to plead an adverse employment

action.  See id. at 90 (discussing retaliation); Carpenter v. City of Mount Vernon, No. 15-

CV-0661 (NSR), 2016 WL 4059353, at *5 (S.D.N.Y. July 27, 2016) (discussing

discrimination).  Thus, under Vega, a plaintiff also must plead an adverse employment

action to succeed on a Constitutional employment discrimination claim.  As discussed

above, Koenig has failed to plausibly allege an adverse employment action.  Koenig

therefore cannot "plausibly allege a claim under the same standards applicable to a Title

VII claim."  Vega, 801 F.3d at 88.  For this reason, Koenig's Constitutional claim fails,

and Count Five is dismissed.

As discussed above, if Koenig were to re-plead his Complaint so as to allege the

additional facts that his attorney represented to the court at oral argument, Koenig could

plausibly allege an adverse employment action.  However, Count Five would still not be

viable, for the reason that follows.

The second reason that Count Five must be dismissed is because the equal

protection clause does not apply to claims of disability-related discrimination or

retaliation in employment.  "[F]reedom from discrimination on the basis of disability is"

not a right secured "by the Constitution."  Fierro v. N.Y. City Dep't of Educ., 994 F.

28

Supp. 2d 581, 590 (S.D.N.Y. 2014).  Thus, a claim of disability discrimination in employment "is not actionable" under section 1983.  Id. at 590; see also Chick v. Cty. of Suffolk, 546 F. App'x 58, 60 (2d Cir. 2013) (holding that plaintiff's equal protection clause "claim that he was discriminated against based on his alleged disability[ ] was not cognizable" because "disability is not a suspect classification under the Equal Protection Clause" and "a 'class of one' does not exist in the public employment context").  A plaintiff's claim that a defendant "violated his Equal Protection rights because [the defendant] discriminated against him based on his disability or perceived disability" therefore "must be dismissed."  Kaiser v. Highland Cent. Sch. Dist., No. 1:08-CV-0436 (LEK/RFT), 2008 WL 5157450, at *2 (N.D.N.Y. Dec. 8, 2008); see also Chick, 546 F. App'x at 58.  The same rule applies to equal protection clause claims of employment retaliation based on disability.  See Klaes v. Jamestown Bd. of Pub. Utilities, No. 11-CV-606, 2013 WL 1337188, at *14 (W.D.N.Y. Mar. 29, 2013) ("[A]llegations related to disability discrimination and retaliation are not cognizable as an Equal Protection claim.  Thus, these allegations cannot be used to support a Section 1983 claim against Defendants.") (emphasis added); Kuder v. City of Rochester, 992 F. Supp. 2d 204, 210 n.4 (W.D.N.Y. 2014) (in disability context, stating that, "equal protection employment [ ] retaliation claims are not actionable under Section 1983.").

The non-viability of equal protection clause claims based on disability-related employment discrimination or retaliation constitutes an independent reason that Count Five must be dismissed.  Even if Koenig were to plead the additional facts discussed at oral argument, Koenig's equal protection clause claim still could not survive, due to the non-applicability of the equal protection clause to such claims.

The defendants argue that Count Five fails for a third reason—Esserman's qualified immunity. See Mot. to Dismiss at 2, 22. Because the court dismisses Count Five, the court need not discuss whether qualified immunity protects Esserman from suit on this Count.

### 3. Intentional Infliction of Emotional Distress

Count Six alleges the state law tort of intentional infliction of emotional distress. The elements of that cause of action in Connecticut are well-established: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253–54 (1986); Olson v. Bristol-Burlington Health Dist., 87 Conn. App. 1, 6–7 (2005); Barneby v. New England Sch. of Montessori, LLC, No. AAN CV-156019330-S, 2016 WL 3768928, at *5 (Conn. Super. Ct. June 9, 2016). The question whether conduct is "extreme and outrageous" is a question of law to be resolved by the court. See, e.g., Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000); Petyan, 200 Conn. at 255. Such conduct, "exceeds all bounds usually tolerated by decent society," and is

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Appleton, 254 Conn. at 210–11; Beauregard v. BTC W. Hartford, LLC, No. HHD CV-126033774-S, 2013 WL 7088324, at *9 (Conn. Super. Ct. Dec. 27, 2013).

30

Courts in this District have repeatedly held that "denial of pay raises and promotions," "discrimination," and "retaliating against an employee for complaining about such discrimination, do not meet the standard for finding that conduct was extreme and outrageous." Ucar v. Connecticut Dep't of Transportation, No. 14-CV-765 (JCH), 2016 WL 4275578, at *16 (D. Conn. Aug. 12, 2016); Lorenzi v. Conn. Judicial Branch, 620 F. Supp. 2d 348, 353 (D. Conn. 2009) (Thompson, J.); see also White v. Martin, 23 F. Supp. 2d 203, 208 (D. Conn. 1998) (Goettel, J.), aff'd sub nom. White v. Comm'n of Human Rights, Opportunities, 198 F.3d 235 (2d Cir. 1999).  Koenig has thus failed to state a claim for intentional infliction of emotional distress upon which relief can be granted.

For this reason, Count Six must be dismissed.  Even if Koenig were to amend his Complaint so as to state a claim for violations of the ADA, Rehabilitation Act, or CFEPA, his intentional infliction of emotional distress claim still could not survive, due to the lack of extreme and outrageous conduct.

The defendants argue that Count Six fails for a second reason—Esserman's qualified immunity.  See Mot. to Dismiss at 2, 22.  Because the court dismisses Count Six, the court need not discuss whether qualified immunity protects Esserman from suit on this Count.

## V.    CONCLUSION

For the foregoing reasons, defendants' First Motion to Dismiss (Doc. No. 11) is **GRANTED** and their Second Motion to Dismiss (Doc. No. 26) is **DENIED**.  Koenig is granted leave to re-plead within **14 days** of the date of this Ruling, so as to plausibly allege facts constituting discriminatory or retaliatory failure to promote in support of

31

Counts One through Four.  Specifically, this court grants Koenig leave to plead the facts alleged at oral argument regarding the City's announcement of plans to rerun the examination, to find new candidates to fill the vacant positions, rather than continuing to promote candidates in the order of the existing ranking.  However, the amended complaint should omit Counts Five and Six, and thus should no longer list Esserman as a defendant.  **If Koenig does not re-plead within 14 days, the case will be closed.**

**SO ORDERED.**

Dated this 15th day of February, 2017, at New Haven, Connecticut.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge