**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JASON KOENIG,<br>　　　Plaintiff, | CIVIL ACTION NO.<br>3:16-cv-514 (JCH) |
| v. | |
| CITY OF NEW HAVEN et al.,<br>　　　Defendants. | MARCH 21, 2018 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 44)**

The plaintiff, Sergeant Jason Koenig ("Koenig"), brings this employment discrimination and retaliation action against the defendant, the City of New Haven ("the City"). See Amended Complaint ("Am. Compl.") (Doc. No. 32). Count One of Koenig's Amended Complaint alleges that the City discriminated against Koenig in violation of the Americans with Disabilities Act ("ADA"). See id. at 11. Count Two alleges that the City retaliated against him in violation of the ADA. See id. at 11–12. Count Three alleges that the City retaliated against him in violation of the Rehabilitation Act. See id. at 12–13. Count Four alleges that the City violated the Connecticut Fair Employment Practices Act ("CFEPA"). See id. at 13–14. The court construes Count Four broadly to encompass both a CFEPA discrimination claim and a CFEPA retaliation claim.

The City now moves for summary judgment on all four counts, asserting that Koenig "is not entitled to recovery as a matter of law based upon the undisputed facts." Defendant's Motion for Summary Judgment ("Def.'s Mot.") (Doc. No. 44) at 1.

For the reasons that follow, the City's Motion for Summary Judgment (Doc. No. 44) is granted.

## I.    FACTS

The defendant, the City of New Haven, is a municipal corporation and employer of over one hundred employees, including Koenig.  Defendant's Rule 56(a)(1) Statement of Facts ("Def.'s Statement") (Doc. No. 45) at ¶ 1; Plaintiff's Rule 56(a)(2) Statement of Facts ("Pl.'s Statement") ("Doc. No. 48-2) at ¶ 1.  The plaintiff, Koenig, was hired by the City as a police officer and has since attained the supervisory rank of Sergeant in the City's Police Department.  Def.'s Statement at ¶ 2; Pl.'s Statement at ¶ 2.

Pursuant to the City's Civil Service Rules, the City must hold a civil service test as a pre-requisite to filling certain positions, including that of lieutenant.  Def.'s Statement at ¶ 6; Pl.'s Statement at ¶ 6.  The results of examinations are used to generate lists of eligible candidates.  See Exh. B, Def.'s Mot. (the "2013 List") (Doc. No. 44-2) at 1 (listing individuals who, "having passed an examination with a score of 70% or more, and having complied with all the Rules and Regulations of the Civil Service Board are hereby certified as eligible for a position" as police lieutenant).  The Civil Service Rules are applicable to all officers, and the Rules explain the process and procedure for promotions, eligibility for promotions, and examinations.  Def.'s Statement at ¶ 6; Pl.'s Statement at ¶ 6.  To be eligible for a promotion, a candidate must comply with the requirements of the Civil Service Rules.  Def.'s Statement at ¶ 6; Pl.'s Statement at ¶ 6.

On September 28 and 29, 2013, Koenig took the examination for promotion to lieutenant administered by the City.  Def.'s Statement at ¶ 4; Pl.'s Statement at ¶ 4.  A score of 70% or higher is sufficient to pass the lieutenant exam.  See 2013 List at 1.

With a score of 71.83, Koenig was eighteenth among the twenty individuals who passed the 2013 lieutenant exam. Id.; see also Def.'s Statement at ¶ 4; Pl.'s Statement at ¶ 4.

In December 2013, Koenig filed his first lawsuit against the City and Chief Esserman (the "2013 Lawsuit"), which was captioned Koenig v. City of New Haven, No. 3:13-CV-1870 (JCH). Def.'s Statement at ¶ 3; Pl.'s Statement at ¶ 3. In that action, Koenig alleged claims of discrimination pursuant to the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Connecticut Fair Employment Practices Act resulting from disciplinary actions taken against the Koenig.[1] Def.'s Statement at ¶ 3; Pl.'s Statement at ¶ 3.

Also in December 2013, twelve lieutenant positions became available. Def.'s Statement at ¶ 7; Pl.'s Statement at ¶ 7. The candidates ranked one through twelve from the 2013 List were promoted to lieutenant. Def.'s Statement at ¶ 7; Pl.'s Statement at ¶ 7. In December 2014, seven lieutenant positions became available. Def.'s Statement at ¶ 8; Pl.'s Statement at ¶ 8. The candidates ranked thirteen through sixteen on the 2013 List were promoted to fill four of the seven lieutenant positions. Def.'s Statement at ¶ 8; Pl.'s Statement at ¶ 8. The City did not fill the remaining three positions.

Under the City's Civil Service Rules, lists of individuals eligible for promotion based on examination results are valid for a limited period of time. Def.'s Statement at ¶ 5; Pl.'s Statement at ¶ 5. In pertinent part, the Civil Service Rules provide as follows:

> The Board shall set the duration of an eligible list at the time
> it is approved and the Board may thereafter extend the

---

[1] In the 2013 Lawsuit, the court dismissed Esserman as a defendant on January 14, 2015, and entered summary judgment in favor of the City on November 10, 2016. See generally Koenig v. City of New Haven, No. 3:13-CV-1870, 2016 U.S. Dist. LEXIS 156873, at **10–13 (D. Conn. Nov. 10, 2016).

duration of the list. The Board's actions shall be subject to the following:

(a) An eligible list shall initially be in effect for one year, or until 75 percent of the list has been exhausted, whichever comes first; provided, however, that the Board shall be notified in advance of a list expiring, so that the Board has the opportunity to extend its duration;

(b) Prior to its exhaustion, the Board may extend the duration of a previously approved eligible list provided that no eligible list shall be in effect for more than two years.

The original certification date of any list shall not be changed by subsequent corrections, amendments, or modifications to the list.

Def.'s Statement at ¶ 5; Pl.'s Statement at ¶ 5. The 2013 List was originally set to expire on November 12, 2013, but, on May 27, 2014, was extended until May 12, 2015.[2] Exh. B., Def's Mot. at 1. At the time the list expired, candidates seventeen through twenty on the 2013 List had not been promoted. Def.'s Statement at ¶ 10; Pl.'s Statement at ¶ 10.

The City next administered the lieutenant exam on March 31, 2017, and, on July 7, 2017, announced promotions to lieutenant from among the candidates who applied and tested at that time. Def.'s Statement at ¶ 15; see Exh. 1, Pl.'s Opposition ("Press Release") (Doc. No. 48-4). Koenig did not apply for or take the 2017 examination, and therefore was not considered for promotion in 2017. Def.'s Statement at ¶¶ 17–18; Pl.'s Statement at ¶¶ 17–18.[3]

---

[2] The City asserts that the 2013 List expired in March 2015. Def.'s Statement at ¶ 10. However, the 2013 List—attached as an Exhibit to the Motion for Summary Judgment by the City—clearly states that it expires on May 12, 2015. Exh. B., Def's Mot. at 1.

[3] The court notes that Koenig failed to comply with Local Rule of Civil Procedure 56(a)(2) in responding to paragraph 17 and 18 of the City's Statement of Facts, as he failed to admit, deny, or properly object to the City's factual assertions. See Loc. R. Civ. P. 56(a)(2) ("A party opposing a motion for summary judgment shall file and serve with the opposition papers a document . . . which shall include .

In his sworn Affidavit, Koenig states that he has been injured in the course of performing his duties as a police officer and sergeant on multiple occasions and, as a result of these injuries, is permanently disabled. Affidavit of Jason Koenig ("Koenig Aff.") (Doc. No. 49-1) at ¶¶ 24–26. Koenig states that he is able to "perform the essential functions of [his] job with or without reasonable accommodation." Id. at ¶ 27. In his Affidavit, Koenig also reproduces a complaint he originally made to the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which complaint describes the circumstances underlying the 2013 Lawsuit. Id. at ¶ 31.

## II.    STANDARD OF REVIEW

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is genuine and material if the evidence is such that a

---

. . a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c).").  In response to paragraph 17, which states "To be eligible for promotion to Lieutenant, an officer must apply and take the Lieutenant examination," Koenig responds, "And not be disabled or sue the defendant."  Pl.'s Statement at ¶ 17.  In response to paragraph 18, which states, "Plaintiff did not submit an application or participate in the 2017 test," Koenig responds, "So what?."  Pl.'s Statement at ¶ 18.  The court construes these responses as admissions.

reasonable jury could return a verdict for the nonmoving party." <u>Cross Commerce Media, Inc. v. Collective, Inc.</u>, 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." <u>LaFond v. Gen. Physics Servs. Corp.</u>, 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." <u>F.D.I.C. v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010) (quoting <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. <u>Cortes v. MTA N.Y. City Transit</u>, 802 F.3d 226, 230 (2d Cir. 2015) (quoting <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54, 59 (2d Cir. 1997)).

## III.  DISCUSSION

Counts One through Four of Koenig's Amended Complaint each allege discrimination, retaliation, or both, in violation of the ADA, the Rehabilitation Act, or CFEPA. Courts analyze claims of discrimination and retaliation pursuant to all three of these statutes by applying the burden-shifting framework first articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Koenig v. City of New Haven</u>, No. 3:13-CV-1870, 2016 U.S. Dist. LEXIS 156873, at **10–13 (D. Conn. Nov. 10, 2016); <u>Richter v. Connecticut Judicial Branch</u>, No. 3:12-CV-1638 (JBA), 2014 WL 1281444, at *9 (D. Conn. Mar. 27, 2014), <u>aff'd,</u> 600 Fed. App'x 804 (2d Cir. 2015) (discussing Rehabilitation Act); <u>Preston v. Bristol Hosp.</u>, 645 Fed. App'x 17, 19 (2d Cir. 2016) (citing <u>Kaytor v. Elec. Boat Corp.</u>, 609 F.3d 537, 556 (2d Cir. 2010)) (discussing CFEPA).

Under the McDonnell Douglas burden-shifting analysis, in order to withstand the Motion for Summary Judgment, Koenig must put forth evidence that establishes a prima facie case of discrimination or retaliation.  See McDonnell Douglas, 411 U.S. at 802 ("The complainant . . . must carry the initial burden [ ] of establishing a prima facie case of [ ] discrimination.").  If Koenig establishes a prima facie case, the burden then shifts to the City to come forth with a "legitimate, nondiscriminatory rationale for its actions." Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 136 (2d Cir. 2016).  If the City provides a legitimate rationale, the burden then shifts back to Koenig to "demonstrate that the proffered reason was not the true reason for the employment decision."  Id.

The court first addresses Koenig's discrimination claims and then turns to Koenig's retaliation claims.

A.      Discrimination

Courts analyzing discrimination claims pursuant to the ADA, the Rehabilitation Act, or CFEPA apply similar standards.  See Wright, 831 F.3d at 72 ("Because the standards under [the ADA and the Rehabilitation Act] are generally the same and the subtle distinctions between the statutes are not implicated in this case, 'we treat claims under the two statutes identically.'" (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003))); Brown v. City of Waterbury Bd. of Educ., 722 F. Supp. 2d 218, 227 (D. Conn. 2010) ("Discriminatory claims brought under the CFEPA are construed similarly to that of ADA claims, with the Connecticut courts reviewing federal precedent concerning employment discrimination for guidance in enforcing the CFEPA." (quoting Worster v. Carlson Wagon Lit Travel, Inc., 353 F. Supp. 2d 257, 267 (D. Conn. 2005))); see also Wanamaker v. Westport Bd. of Educ., 899 F. Supp. 2d 193, 212 (D. Conn.

2012) ("The standards governing discrimination under CFEPA are the same as those governing ADA claims.").

### 1. Prima Facie Case

To establish a prima facie case of discrimination under the ADA, the Rehabilitation Act, or CFEPA, Koenig must show the following: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA;[4] (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001) (quoting Heyman v. Queens Vill. Comm. for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999)).

The first three requirements do not appear to be in dispute. See, e.g., Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 44) at 13 (challenging only the fourth prong of the analysis). As to the fourth prong, Koenig alleges that he suffered an adverse employment action by not being promoted to lieutenant. See Am. Compl. at ¶ 45.

A failure to promote can constitute an adverse employment action giving rise to a retaliation claim pursuant to the ADA, the Rehabilitation Act, or CFEPA. See Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002); Farrar v. Town of Stratford, 537 F. Supp. 2d 332, 348–49 (D. Conn. 2008). To establish a prima facie failure-to-promote case, a plaintiff must show: "(1) [he] is a member of a protected class; (2) [he] applied

---

[4] Courts have recognized one material distinction between the ADA and CFEPA for the purposes of discrimination claims, namely that CFEPA's definition of physical disability is broader than the ADA's definition. See Hopkins v. New England Health Care Employees Welfare Fund, 985 F. Supp. 2d 240, 255 (D. Conn. 2013). In connection with the pending Motion for Summary Judgment, however, Koenig's disability status is not in dispute. Therefore, for the purposes of this case, the analysis under CFEPA and the ADA is the same.

for and was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004) (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998)). The Second Circuit has stated that the general rule that employees must show both application and rejection "ensures that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer." Brown, 163 F.3d at 710. The Second Circuit has recognized an exception to this general rule, however, where "the facts of a particular case make" the rule "a quixotic requirement," such as where an employer "refused to accept applications for positions or hand-picked individuals for promotion to a position without considering applicants." Id.; see also Petrosino, 385 F.3d at 227 ("[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer.").

In this case, the City does not dispute that Koenig submitted a specific application for promotion. Instead, the City argues that Koenig "was never subjected to an adverse employment action" because "[a] condition of [Koenig]'s eligibility for promotion was always that it was set to expire after two years under the Civil Service Rules." Def.'s Mem. at 14. In other words, the City argues that it did not make a decision with respect to Koenig's application at any point while the 2013 List was in effect and that the expiration date on the 2013 List effectively made the City's decision

for it.  Koenig argues that accepting this line of reasoning by the City would create "impunity for an employer who refuses to promote an employee for discriminatory or retaliatory reasons" by inaction rather than action.  Pl.'s Mem. at 16.

Therefore, the question for the court is when—if at all—Koenig was "rejected" for a promotion to lieutenant.  The court concludes that Koenig's application for promotion to lieutenant was functionally "rejected" by the City at the time that other applicants were promoted, namely in June 2014 and December 2014.  It is not disputed that Koenig applied for a promotion to lieutenant, that he was not promoted during the time in which he was eligible, and that other individuals were promoted on two separate occasions. See Defendant's Statement at ¶¶ 4–8, 10; Plaintiff's Statement at ¶¶ 4–8, 10.  That the City was evidently making promotions in order of performance on the 2013 lieutenant examination is relevant to the City's legitimate explanation for its failure to promote Koenig, not to the determination of whether Koenig was rejected.

The court's decision to treat the two rounds of promotions as the adverse employment actions is consistent with the treatment of failure-to-promote decisions as "discrete acts."  Petrosino, 385 F.3d at 220 (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)).  To treat the time period following the second round of promotions—but prior to Koenig's expiration—as the relevant time period would be inconsistent with that standard.  As to the May 2015 expiration date, the court agrees with Koenig that to view the expiration of his eligibility (in May 2015) as the relevant event, and to insulate employers from liability when eligibility expires, would unfairly shield employers who did not affirmatively reject applicants.  Yet treating the expiration date of the 2013 List as the date of "rejection" by the City makes little sense, since there

is no evidence suggesting that, in May 2015, the City made a decision with respect to the application of Koenig or anyone else.  And after the 2013 List expired in May 2015, the City's failure to promote Koenig—for example, in July 2017 when the next round of promotions was made—did not constitute an adverse employment action because he was no longer "qualified" for the lieutenant position and arguably had not even applied for a promotion at that time by taking the test.  See id. at 226 (plaintiff must show he "applied for and was qualified for a job for which the employer was seeking applicants").

In sum, the court concludes that Koenig has shown he was subject to an adverse employment action, and that the relevant time period for the adverse action was June 2014 and December 2014.

### 2. City's Burden of Production

However, the court also concludes that the City has satisfied its burden of putting forth a legitimate, non-discriminatory explanation for their failure to promote Koenig.  In order to satisfy its burden of producing a legitimate explanation, the City need only "'set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981)).  As detailed in the Facts section, see supra Section I, it is undisputed that the City hired the top sixteen eligible candidates in the order of their scores on the lieutenant exam and that Koenig was ranked eighteenth.  Def.'s Mem. at 15 ("Plaintiff was not promoted along with three other candidates of both greater and lesser qualifications.").  The City asserts that it did not promote Koenig because it promoted candidates in the order of

their performance on the exam, and it chose not to promote more sergeants to lieutenant because "the Department required more Sergeants supervising first line officers on patrol rather than additional higher ranked non-patrol officers." Id. at 16. In support of these explanations for their failure to promote, the City attaches sworn Affidavits from the Budget Director for the City of New Haven, Michael Gormany, as well as the then-Chief of Police for the City of New Haven, Dean Esserman. See Affidavit of Michael Gormany ("Gormany Aff.") (Doc. No. 44-4); Affidavit of Dean Esserman ("Esserman Aff.") (Doc. No. 44-5).

The court concludes that these explanations—that the City hired in order of performance on the lieutenant exam and chose not to fill all available positions in order to manage personnel resources efficiently—are legitimate and nondiscriminatory, and are supported by admissible evidence. The court further concludes that the evidence submitted in support of these explanations is sufficient to satisfy the City's burden of production. See Burdine, 450 U.S. at 254 ("[Evidence] is sufficient if [it] raises a genuine issue of fact as to whether [the defendant] discriminated against the plaintiff.").

### 3. Koenig's Burden of Persuasion

Having concluded that the City has satisfied its burden of production with respect to legitimate reasons for their failure to promote Koenig, the burden therefore returns to Koenig to produce evidence upon which a reasonable factfinder could conclude that "the proffered reason was not the true reason for the employment decision." Kovaco, 834 F.3d at 136. "The plaintiff's opportunity to demonstrate that the employer's proffered reason as false now merges with [his] ultimate burden to persuade the trier of fact that [he] has been the victim of intentional discrimination (i.e., that an illegal

discriminatory reason played a motivating role in the adverse employment decision)."
Bickerstaff v. Vassar College, 196 F.3d 435, 446–47 (2d Cir. 1999). In order to satisfy his burden, it is not sufficient for Koenig to provide evidence upon which a reasonable factfinder could conclude that the City's proffered explanation is false; rather, he "must prove, in addition, that a motivating reason was discrimination." Id. at 447 (quoting Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 120 (2d Cir. 1997)).

In support of his Opposition (Doc. No. 48) to the City's Motion for Summary Judgment, Koenig attaches two exhibits: (1) his own sworn Affidavit (Doc. No. 48-3), and (2) a Press Release issued by the New Haven Police Department congratulating employees who were promoted to lieutenant on July 7, 2017 (Doc. No. 48-4).

With respect to the City's proffered explanations, Koenig does not dispute the City's assertion that it made promotions in order of performance on the lieutenant exam. See Pl.'s Mem. at 18 (describing the City's practice of promoting "in the order of the list" as "nondiscriminatory"). His argument, instead, is focused on the City's decision not to fill all seven open lieutenant positions. Koenig asserts that, contrary to the City's assertion that sergeants were needed more than lieutenants, "operational need . . . called for more Lieutenants, rather than for more Sergeants." Pl.'s Mem. at 14. In support of his argument, Koenig states that, during the relevant time period, the City was using sergeants to do the work of lieutenants, specifically to fill positions known as "District Manager." Koenig Aff. at ¶¶ 7–15. Koenig asserts that, "[r]ecently, Assistant Chief Anthony Reyes stated that the position of District Manager is to be held by a Lieutenant" and replaced all sergeants in that position with lieutenants. Id. at ¶¶ 13–15.

He also asserts that the promotions made in July 2017 suggests that the City "admits that more promotions to Lieutenant were necessary to the [Police] Department."  Pl.'s Mem. at 3.

The City asserts that Koenig has failed to satisfy his burden with respect to their explanation because his Affidavit "is not based on personal knowledge [and] fails to refute the financial justifications for the City's hiring practices."  Defendant's Reply to Plaintiff's Opposition ("Def.'s Reply") (Doc. No. 54) at 1.  Specifically, the City argues that Koenig "lacks the qualifications to opine as to the City's logistical and budgetary considerations surrounding the promotions."  Id. at 5.  Federal Rule of Civil Procedure 56 ("Rule 56"), which governs motions for summary judgment, requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

The court agrees with the City that Koenig's evidence is insufficient to create a genuine dispute of material fact as to whether the City's explanation is a pretext for discrimination.  With respect to Koenig's argument regarding the District Manager position, Koenig has merely described a factual situation consistent with the City having a greater need for lieutenants than it had for sergeants—namely, filling District Manager positions with sergeants.  He has not, and cannot, however, swear to the City's reason for filling District Manager positions with sergeants, because he lacks personal knowledge as to the City's decisionmaking in that regard.  Koenig generally states that he is "familiar with the organizational structure of the New Haven Police Department," but he does not purport to have been a part of conversations about promotions or to be

14

knowledgeable about the City's budgetary constraints. Koenig Aff. at ¶ 6. Without personal knowledge on this subject—or admissible evidence from individuals who have personal knowledge—Koenig cannot survive summary judgment by simply asserting that the City is lying about its decisionmaking. See Crawford-El v. Britton, 523 U.S. 574, 600 (1998) ("[I]f the [moving party] has made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden.").

As to Koenig's argument regarding the 2017 promotions, see Pl.'s Mem. at 3, the court concludes that no reasonable jury could infer from the City's decision to award promotions in 2017 anything about the City's operational needs in 2015. Had the City hired down the list until Koenig, allowed the 2013 List to expire in May 2015, and then immediately issued a new test from which to promote, that would have at least suggested that the City had unmet needs in 2015. That the City not only permitted the 2013 List to expire without promoting the remaining person who outscored Koenig on the 2013 exam, but then also did not hold another examination for almost two years is entirely consistent with the City's assertion that, in 2015, the need for sergeants was greater than the need for lieutenants.

Furthermore, Koenig has provided no evidence upon which a reasonable factfinder could conclude that the City was motivated by discriminatory animus. Koenig asserts that the City's failure to promote any of the four lowest-ranked candidates indicates that the City "would rather spite itself and be understaffed than promote the outspoken plaintiff—strong evidence of retaliatory animus in and of itself." Id. In his

Affidavit, Koenig elaborates on this theory, asserting that, "[o]n information on belief, the [City] did not promote the remaining eligible candidates other than myself in an effort to mask its discrimination and retaliation against me." Koenig Aff. at ¶ 41. However, the City's failure to promote candidates other than Koenig clearly supports the <u>absence</u> of discriminatory animus, not the <u>presence</u> of it. No rational factfinder would interpret the City's choice not to promote the other candidates as proof that the City was motivated by discriminatory animus against Koenig, as opposed to evidence to the contrary. Although this inference could certainly be overcome by evidence of discriminatory motive, it is not evidence of such motive, standing alone. Koenig has offered no acceptable proof to support his theory. The only evidence he provides on this topic is his own statement in an Affidavit, which, on its face, is not based on his personal knowledge. <u>See</u> Koenig Aff. at ¶ 41 (prefacing his assertion with the phrase "[u]pon information and belief"). This is insufficient to create a material issue of disputed fact. <u>See</u> Fed. R. Civ. P. 56(c)(4) (affidavits must "set out facts that would be admissible in evidence" and "must be made on personal knowledge").

Koenig also asserts that the City's failure to interview him for a promotion to lieutenant, "[i]n the context of [the-Chief] Esserman's statements evidencing his disability based animus toward the plaintiff" creates a "reasonable inference" that Koenig was not promoted "because of disability based animus." Pl.'s Mem. at 17. However, the only evidence that Koenig submitted to support the existence of then-Chief Esserman's statements is Koenig's recital, in his Affidavit, of the facts underlying his 2013 Lawsuit. <u>See</u> Koenig Aff. at ¶ 31. In pertinent part, these allegations include that Esserman described Koenig's medical record as "the worst record" he had seen in

twenty years; and that Esserman "inappropriately commented on my sensitive, confidential protected health information."[5] Id.

These statements were the basis of Koenig's 2013 Lawsuit against the City. See generally Amended Complaint (Doc. No. 59), Koenig v. City of New Haven, No. 3:13-CV-1870 (JCH). In a Ruling granting the City's Motion for Summary Judgment filed in that case, this court concluded as follows:

> First, Koenig's "worst record" statement is insufficient to establish a genuine dispute of material fact as to whether Esserman expressed any disability-based bias because, taken in the light most favorable to Koenig, the "worst record" statement could not lead a reasonable jury to find that Esserman had expressed bias. The "worst record" statement lacks sufficient details to show how Koenig knew that Esserman was referring to Koenig's "disability, medical conditions and line of duty injuries." There is nothing in the record to indicate, or support an inference, that the "worst record" comment referred to disability.
>
> Second, Koenig's "inappropriately commented" statement is similarly insufficient to show bias, because the statement fails to describe Esserman's allegedly inappropriate comment, stating only that the comment was "on [Koenig's] sensitive, confidential protected health information." Koenig's complaint to the CHRO thus reveals only that Koenig felt Esserman's comment was inappropriate. A reasonable jury would have no basis upon which to infer, as Koenig suggests, that Esserman's comment (1) in fact involved Koenig's sensitive,

---

[5] In Koenig's Memorandum, he also asserts that Esserman "instructed his subordinates to 'hammer' the plaintiff because of his disabilities, in an effort to cause the plaintiff to resign." Pl.'s Mem. at 17. However, in Koenig's Affidavit, he does not attribute the "hammer" comment to Esserman directly, but merely states, "I learned that I was to be 'hammered' and that supervisors of the defendant were to create situations allowing defendant to impose discipline upon me." Koenig Aff. at ¶ 31. Therefore, the court lacks any evidence to support Koenig's assertion in his Memorandum that Esserman made the "hammer" comment. Furthermore, even assuming that this comment was made by Esserman, Koenig does not explain how he heard the comment. Nothing in his Affidavit can be read to even infer that Koenig heard the statement from Esserman himself, which would render any testimony by Koenig on this subject inadmissible hearsay and is not, therefore, relied upon by this court for this summary judgment Ruling. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

> confidential protected health information, and (2) was
> inappropriate.

Koenig, 2016 U.S. Dist. LEXIS 156873, at **23–24.  The court is still of the view that this evidence, offered by Koenig in his 2013 Lawsuit, is not a basis for a finding of discriminatory animus.  Koenig has provided no additional evidence or support to lead the court to reach a different conclusion in this case with respect to Esserman's comments than it reached in the 2013 Lawsuit.

In addition, Koenig has failed to connect these comments in any way to the City's failure to promote Koenig.  "[V]erbal comments may raise an inference of discrimination, but not where they lack a 'causal nexus to the termination decision.'"  Luka v. Bard College, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (quoting Williams v. Victoria's Secret, No. 15-cv-4715 (PGG) (JLC), 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017)).  In determining whether comments are probative of discriminatory animus, the Second Circuit has held that the following four considerations provide a useful framework:

> (1) who made the remark (i.e., a decision-maker, a supervisor,
> or a low-level co-worker); (2) when the remark was made in
> relation to the employment decision at issue; (3) the content
> of the remark (i.e., whether a reasonable juror could view the
> remark as discriminatory); and (4) the context in which the
> remark was made (i.e., whether it was related to the decision-
> making process).

Henry v. Wyeth Pharmaceuticals, Inc., 616 F.3d 134, 149 (2d Cir. 2010).  In this case, the first factor is satisfied because Esserman was indisputably involved in decisionmaking about promotions.  See, e.g., Esserman Aff. at ¶¶ 3–4.  However, the other three factors reflect no causal nexus between Esserman's comments and the adverse action at issue.  By Koenig's own admission, Esserman made the comments at

issue between May and November of 2012, over a year before the first round of promotions involved in this case occurred.  See Koenig Aff. at ¶ 31 (noting that CHRO complaint detailing Esserman comments was filed in November 2012); Esserman Aff. at ¶ 10 (first twelve positions became available on December 6, 2013).  As to the third factor, this court has just concluded that a reasonable juror could not find from the comments as Koenig describes them that they reflect disability-based animus.  See supra Section III(A)(3).  Finally, Koenig has not alleged that the remarks were made in the context of the promotion decision-making.  See Koenig Aff. at ¶ 31 (describing comments in the context of a disciplinary meeting approximately one year before he applied for the promotion to lieutenant).

In short, Koenig's evidence not only does not create a genuine issue of material fact as to discriminatory animus for the reasons the court articulated in its Ruling in the 2013 Lawsuit, but suffers from the additional defect in this case that Esserman's comments were not causally linked to Koenig's promotion in any discernible way.  The court therefore concludes that Koenig has failed to provide evidence upon which a reasonable jury could infer that the City's failure to promote Koenig was motivated, in whole or in part, by disability-based discriminatory animus.

In reaching the conclusion that Koenig has failed to provide evidence upon which a reasonable factfinder could conclude that discrimination played a role in the City's decision not to promote him to lieutenant, the court recognizes that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated." Campbell v. Windham Comm. Mem. Hosp., Inc., 389 F. Supp. 2d 370, 378 (D. Conn. 2005) (quoting Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985)).  However, as the

Second Circuit has noted, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  Meiri, 759 F.2d at 997.  Here, the only purported evidence of discrimination that Koenig has provided is his own opinion that the City was motivated by discriminatory animus.  Because the City's legitimate explanation for its decision not to promote Koenig defeats a presumption of discrimination, Koenig has failed to come forward with admissible evidence which, taken as a whole, would create a material dispute of fact necessary to defeat summary judgment on his discrimination claims.

The City's Motion for Summary Judgment is granted with respect to Koenig's ADA and CFEPA discrimination claims, Counts One and Four.

B.      Retaliation

Retaliation claims brought pursuant to the ADA, the Rehabilitation Act, and CFEPA are analyzed within the same framework as discrimination claims.  See Weixel, 287 F.3d at 148 (noting that the elements of a retaliation claim pursuant to the Rehabilitation Act and the ADA are the same); Hopkins, 985 F. Supp. 2d at 255 (applying identical analysis to retaliation claims pursuant to the ADA and CFEPA).  The court will therefore consider all of Koenig's retaliation claims, raised in Counts Two, Three, and Four, together.

1.  Prima Facie Case

In order to establish a prima facie case of retaliation, Koenig must show: "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity."  Treglia, 313 F.3d at 720.  The first factor is not in dispute, and is clearly satisfied by

Koenig's complaints to the EEOC, CHRO, and his filing of the 2013 Lawsuit. See id. (concluding that the plaintiff's "attempts to assert his rights against discrimination," including "filing of federal and state administrative charges" were clearly protected activities). With respect to the second factor, the City does not dispute that it was aware of Koenig's protected activity. As to the third factor—whether an adverse action was taken against Koenig—the court has already concluded that the City's failure to promote Koenig constitutes an adverse employment action. See id. ("[Plaintiff]'s claim of discriminatory failure to promote falls within the core activities encompassed by the term 'adverse actions.'"). The remaining dispute, for the purposes of Koenig's prima facie case, is whether Koenig has shown a "causal connection" between his protected activity and the City's failure to promote him.

Koenig argues that he has satisfied the fourth prong in two ways. First, he asserts that Esserman's comments, described above, see supra Section III(A)(3), show a causal connection between his protected activity and the City's failure to promote him. See Pl.'s Mem. at 20–21. Koenig does not explain why this is the case, however, and the court concludes that Esserman's comments, which were made approximately a year before the promotion decision and do not relate in any way to Koenig's protected activity, do not constitute evidence upon which a reasonable jury could find a causal connection.

Koenig's second argument is that a "close temporal relationship" exists between Koenig's protected activity and the City's failure to promote him. Id. at 21. It is well established that close temporal proximity between protected activity and an adverse employment action can satisfy the causation requirement for the purposes of a prima

facie case of retaliation.  Compare Treglia, 313 F.3d at 720 (temporal proximity of three weeks sufficient to show causal connection) with Cobian v. N.Y. City, No. 99-CV-10533, 2000 WL 1782744, at *18 (S.D.N.Y. Dec. 6, 2000) (temporal proximity of four months insufficient to show causal connection); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . uniformly hold that the temporal proximity must be 'very close.'" (internal citations omitted) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)).

The City argues that there was not sufficient temporal proximity between Koenig's protected actions and the adverse employment action at issue because "[p]laintiff filed [the 2013 Lawsuit] on December 17, 2013—six months before the first round of promotions in June of 2014 and 353 days before the second round of promotions."  Def.'s Reply at 9.  The court need not reach the question of whether the temporal proximity between the December 2013 filing date and the two promotion dates is sufficiently close, because the court concludes that the City's reliance on the filing date is misplaced.  See Brown v. City of Waterbury Bd. of Educ., 722 F. Supp. 2d 218, 233 (D. Conn. 2010) ("[T]he court agrees with Brown that the defendants wrongly emphasize the temporal relationship between the filing of the 2005 lawsuit and the termination of Brown's employment."); Singleton v. Mukasey, No. 06-CV-6588 (GEL), 2008 WL 2512474, at *6 (S.D.N.Y. June 13, 2008) ("Because Singleton's litigation . . . was ongoing at the time of the decisions not to promote him, such decisions necessarily

followed closely on protected activity by Singleton." (internal citations omitted)), aff'd sub nom. Singleton v. Holder, 363 Fed. App'x 87 (2d Cir. 2010) (summary order).

The court notes that, in a recent summary order, the Second Circuit stated that the "relevant starting point" for the purposes of calculating temporal proximity between a lawsuit and an adverse employment action is "the filing of the lawsuit, not its ultimate resolution." Dotson v. City of Syracuse, 688 Fed. App'x 69, 73 (2d Cir. 2017) (summary order). However, in Dotson the Second Circuit considered the significant length of the underlying litigation relevant, noting that litigation went on for eight years. Id. The Second Circuit distinguished Singleton on two grounds: (1) "[t]he time between the initial filing of the lawsuit in Singleton and the allegedly retaliatory action" was only five months, and (2) the Singleton "litigation was ongoing at the time of the alleged retaliation." Id. The materiality of these distinctions is supported by published, precedential Second Circuit cases that treat actions within lawsuits as relevant "protected activity" for the purposes of the temporal proximity analysis. See, e.g., Treglia, 313 F.3d at 721 (treating plaintiff's submission of witness list and notification to colleagues that they might be called as witnesses as protected activity for temporal proximity analysis); Richardson v. N.Y. State Dept. of Corr. Serv., 180 F.3d 426, 447 (2d Cir. 1999), overruled on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (treating service of deposition notices as protected activity for temporal proximity analysis).

In this case, it is not disputed—nor could it be—that Koenig's 2013 Lawsuit was active during the time that the City made the decision not to promote Koenig, regardless of whether that date was in June 2014 or December 2014. See Koenig, 2016 U.S. Dist.

LEXIS 156873 (granting summary judgment in favor of the defendant on November 10, 2016). The case was actively litigated during the time period at issue: Koenig initiated the 2013 Lawsuit in December 2013, the same month that the first group of lieutenant positions became available; in May 2014 (one month before the first promotions were made) the defendants filed Motions to Dismiss; in October 2016, Koenig filed an Amended Complaint; in November 2014, the defendants filed more Motions to Dismiss; and, in December 2014 (when the second round of promotions was made), Koenig filed his Objection to the Motions to Dismiss. See generally Koenig v. City of New Haven, No. 3:13-CV-1870. In short, this is not a situation akin to the Dotson case where lengthy litigation concluded several months before an adverse employment action, but rather a case in which Koenig's 2013 Lawsuit was being vigorously pursued and defended at precisely the same time the City was deciding which candidates to promote to lieutenant. The court therefore concludes that Koenig has adequately shown close temporal proximity between his protected conduct and the adverse employment action, and therefore has established a prima facie case of retaliation under the ADA, the Rehabilitation Act, and CFEPA.

2. City's Burden of Production

As in the discrimination analysis above, see supra Section III(A), the burden now shifts to the City to produce a legitimate explanation for its decision not to promote Koenig. The court concludes that the City has satisfied this obligation for precisely the same reasons the court has already described, see supra Section III(A)(2). The court therefore turns to the final stage in the McDonnell-Douglas analysis: Koenig's burden of showing that the City acted pursuant to an "unlawful motive." Treglia, 313 F.3d at 721.

24

### 3. Koenig's Burden of Persuasion

Although temporal proximity is sufficient to establish causation for the purposes of Koenig's prima facie case, Koenig must provide something more in order to satisfy his ultimate burden of persuasion.  See Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 847 (2d Cir. 2013) ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage."); El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case . . . , but without more, such temporal proximity is insufficient to satisfy [the] burden to bring forward some evidence of pretext."); Poitras v. ConnectiCare, Inc., 206 F. Supp. 3d 736, 749 (D. Conn. 2016) ("Evidence of pretext may include temporal proximity between the protected activity and the adverse action plus additional evidence either showing retaliatory animus or disproving the truth of the employer's legitimate reason for the adverse action."); see also Treglia, 313 F.3d at 721 (moving beyond temporal proximity at the final stage and finding that the plaintiff had produced evidence "that tend to show pretext and retaliatory motive").

Koenig does not directly address his ultimate burden to come forward with evidence of retaliatory animus or pretext at the final stage of the retaliation analysis in his Memorandum.  The only arguments that he raises that could be construed as showing retaliatory animus relate to the Esserman comments and the temporal relationship between his protected activity and the City's failure to promote him.  See Pl.'s Mem. at 20–22.  The court has already concluded that the first category of evidence, the comments by Esserman, do not suggest retaliatory animus as they were

made before Koenig complained and do not relate to Koenig's protected activity.  See supra Section III(B)(1).  As to the temporal relationship, the court has concluded that the temporal relationship is very close, as the failure to promote Koenig overlapped with his ongoing protected activity.  See id.  However, temporal proximity, on its own, is insufficient to "show pretext [or] retaliatory motive."  Treglia, 313 F.3d at 721.  Koenig has failed to produce any evidence—aside from the timing of the City's failure to promote him—to support his retaliation claims.  In light of the City's legitimate explanations for their decision not to promote Koenig, temporal proximity alone is insufficient to withstand the City's Motion for Summary Judgment.  See, e.g., Zann Kwan, 737 F.3d at 847.

The City's Motion for Summary Judgment is granted with respect to Koenig's retaliation claims pursuant to the ADA, the Rehabilitation Act, and CFEPA, which were raised in Counts Two, Three, and Four.

## IV.    CONCLUSION

For the foregoing reasons, there are no genuine issues of material fact with respect to any of Koenig's claims and the City is entitled to judgment as a matter of law on all counts.  The City's Motion for Summary Judgment (Doc. No. 44) is **GRANTED**, and the case is closed.

**SO ORDERED**.

Dated this 21st day of March 2018 at New Haven, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

26